UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


WOODS, et al.,                              )
                                            )
                    Plaintiffs,             )
                                            )
         vs.                                )
                                            )
SOUTHWEST AIRLINES, CO., et al.,            )
                                            )
                    Defendants.             )
                                            )          06 C 2203
_____           )
                                            )
RONALD A. STEARNEY, SR., and                )
RONALD A. STEARNEY, JR.,                    )
                                            )
                    Petitioners,            )
                                            )
         vs.                                )
                                            )
CLIFFORD LAW OFFICES, P.C., et al.,         )
                                            )
                    Respondents.            )


**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

        This matter comes before the court on three motions.  The first is a motion by

Respondents Clifford Law Offices ("the Clifford firm"), Schlyer & Associates ("the

Schlyer firm"), and Donald Schlyer for partial summary judgment of Count I of the

petition of Ronald A. Stearney Sr. and Ronald A. Stearney Jr. (collectively referred to

as "the Stearneys") to adjudicate an attorneys' lien. The second is a cross motion for partial summary judgment filed by the Stearneys on the same count. The third is a motion by the Clifford firm to dismiss Count II of the Stearneys' petition. For the reasons set forth below, the Clifford firm's motion for partial summary judgment is granted in part and denied in part; the Stearneys' cross motion is denied. The motion to dismiss Count II is granted.

## BACKGROUND

The dispute between the Stearneys and the Respondents arises out of the underlying lawsuit filed by the family of Joshua Woods ("the Woods family") against Southwest Airlines Company and the Boeing Company. On December 8, 2005, an airplane manufactured by Boeing and operated by Southwest crashed through a barrier at Chicago's Midway Airport and into traffic on the street beyond.[1] Joshua was riding in a car on that street with his mother Lisa, his father Leroy, and his two brothers. The latter four were each injured; Joshua was killed.

---

[1] The factual recitation contained herein is derived from documents attached to the Stearney's petition, undisputed facts set forth in the Rule 56.1 statements of material fact filed in conjunction with the cross motions for summary judgment, and facts that are admitted by operation of Local Rule 56.1. See *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). We have also disregarded any facts asserted in the parties' statements of material fact that are unsupported by the record or do not comply with Local Rule 56.1. *See Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

Four days after the crash, the Woods family retained the Stearneys to represent them in any legal matters that arose out of the accident. Specifically, the family retained the firm of Ronald A. Stearney and Associates ("the Stearney firm") to "prosecute and/or settle all suits and claims for damages against Southwest Airlines, FAA, City of Chicago on account of personal injuries and/or property damages" the Woods family experienced arising out of the December 8 accident. The agreement provided that all attorneys' fees would be paid from funds recovered in connection with the claims arising from the accident. The agreement contemplated a contingent fee arrangement, whereby the Stearney firm would be paid one third of the amount recovered if the claim was resolved by settlement prior to suit being filed. If the claim was resolved after suit was filed, the fee would be assessed as 40% of the eventual recovery. If the suit was resolved in favor of the defendants and resulted in an appeal, the Stearney firm was to be paid 50% of any eventual recovery. The Woodses agreed that the Stearney firm would have a lien on all claims for the amount of any fee owed. The agreement also provided that if there was no recovery from the suit, the Stearney firm would be paid nothing, unless the Woodses discharged the Stearney firm before the suit was resolved. In the event of discharge, the Woodses would pay $190 per hour for the time the Stearney firm actually worked on the case, regardless of whether the family obtained any recovery on their claims.

The day after the Woodses retained the Stearney firm, Stearney Jr. mailed a notice of attorney's lien to Southwest and the City of Chicago. The lien notice stated that the Woods family had agreed to pay the Stearney firm one third of any amount recovered via settlement and 40% of any amount recovered by suit.

About 10 days later, the Stearneys met with members of the Clifford firm to discuss the prospect of the Clifford firm participating in the representation of the Woods family. The discussions culminated in an agreement signed January 6, 2006 ("January 2006 agreement"), which contained the following terms:

> We, Lisa Woods and Leroy Woods...employ and appoint Ronald A. Stearney and Ronald A. Stearney, Jr. and Clifford Law Offices, P.C., as our attorneys to represent us in the settlement, adjustment, or prosecution of a cause of action, against persons or entities responsible arising out of an occurrence on or about the 8th day of December 2005 in Cook County, Illinois, and agree to pay Ronald A. Stearney and Ronald A. Stearney, Jr. and Clifford Law Offices, P.C., as compensation for their services and assign to them, one-third (1/3) of any sum obtained or recovered therefrom by suit, settlement or otherwise.
>
> We hereby authorize Ronald A. Stearney and Ronald A. Stearney, Jr. and Clifford Law Offices, P.C., at their discretion, to associate with other counsel to continue the representation of our case and, where appropriate, retaining that specialized counsel as an expense to the litigation for purpose of appeal or otherwise.
>
> If, pursuant to any settlement agreement or order of court, any sums of money are to be paid in future periodic installments, through the purchase of an annuity policy or otherwise, the present cash value (purchase price) of said annuity, as well as any lump sum payments made at the time of settlement, will be the basis for determining the professional fee. Said fees will be payable at the time of settlement or dismissal of the case.
>
> ...

I [sic] fully understand, agree and consent to the fact that Ronald A. Stearney and Ronald A. Stearney, Jr. and Clifford Law Offices, P.C., will divide the above-described attorney's fees in the following amounts:

> Fifty percent (50%) to Ronald A. Stearney and Ronald A. Stearney, Jr., jointly;
> Fifty percent (50%) to Clifford Law Offices, P.C..

We hereby grant Ronald A. Stearney and Ronald A. Stearney, Jr., and Clifford Law Offices, P.C. and their related counsel a lien on these causes of actions [sic] and a lien on any proceeds and any judgments recovered in connection with these causes of actions [sic] as security for the payment of attorneys' fees and expenses as contracted for herein.

The agreement was signed by both Lisa and Leroy Woods. It went on to state that Ronald Stearney Sr., Ronald Stearney Jr., and the Clifford firm "agree to assume professional responsibility in the above cause entrusted to us and to charge no fee unless recovery is had...."

Approximately one month later, on February 9, the Woods family terminated the Stearneys' representation of them, via letter from the Schlyer firm, their new counsel. The communication included a letter signed by Lisa and Leroy that contained the following language:

> Please let this letter serve as notice that we have terminated you and your firms [sic] services for all matters connected with the airplane incident on December 8, 2005...This letter also serves as notice that we have terminated the services of all other attorneys you have retained or associated with on our behalf for this incident.

The following day, the Schlyer firm and the Woods family met with the Clifford firm to discuss a new representation agreement involving the Clifford firm. One month later, the relationship was memorialized in a new document ("the March 2006

agreement") that was identical to the January 2006 agreement save for the substitution of the name of the Schlyer firm for the Stearneys' names.

On April 7, 2006, the Schleyer firm and the Clifford firm filed a 31-count, 86-page complaint in Illinois state court on behalf of the Woods family. The matter was timely removed to this court. The Stearneys do not appear as attorneys of record for any members of the Woods family in either the state court complaint or the federal docket. Approximately one year later, the Woods family settled all claims they had against Southwest and Boeing in a confidential agreement.

On March 1, 2007, the Stearneys filed a verified petition for adjudication of an attorneys' lien in this court. In it, they asserted a claim to 50% of one third of the amount the Woodses received from the settlement, pursuant to the terms of the January 2006 agreement. The Stearneys later amended their petition to add a count of breach of fiduciary duty against the Clifford firm.

The Clifford firm, the Schleyer firm, and Schleyer now move for partial summary judgment on the questions of whether the Stearneys can enforce the January 2006 agreement or if they are limited to pursuing a *quantum meruit* remedy for the services they provided prior to February 9, 2006. The Stearneys have cross-moved on the same issues. The Clifford firm also moves to dismiss the claim of breach of

fiduciary duty pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that it fails to state a claim upon which relief can be granted.

## LEGAL STANDARDS

### A. Motions for Summary Judgment

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. Proc. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

**B.  Motion to Dismiss**

A Rule 12(b)(6) motion to dismiss is used to test the legal sufficiency of a complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991).  To be cognizable, the factual allegations contained within a complaint must raise a claim for relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  However, a pleading need only convey enough information to allow the defendant to understand the gravamen of the complaint. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999).

A complaint's legal sufficiency is not compromised simply because it does not anticipate or otherwise preemptively address potential defenses.  *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).  However, if the complaint or documents attached thereto assert particular facts that defeat a plaintiff's claim, the plaintiff has pleaded him- or herself out of court and a 12(b)(6) dismissal is appropriate.  *See, e.g., Thompson v. Ill. Dept. of Prof. Reg.*, 300 F.3d 750, 753 (7th Cir.

2002). Furthermore, the requirement that a court draw reasonable inferences in favor of the plaintiff does not include an obligation to ignore facts set out in the complaint that undermine an asserted claim. *See R.J.R. Servs., Inc. v. Aetna Casualty and Surety Co.*, 895 F.2d 279, 281 (7th Cir. 1988).

With these principles in mind, we turn to the instant motions.

## DISCUSSION

This case is one of a bevy of actions that were filed in the Circuit Court of Cook County by passengers on the airplane and bystanders on the ground and thereafter removed to our court. All were removed based on an assertion of federal question jurisdiction, though in some the parties were also of diverse citizenship. Plaintiffs in four of the cases challenged the asserted jurisdictional basis in a motion to remand, which we denied. However, because of the importance of the issues presented, we certified our orders for interlocutory appellate review. Before the court of appeals rendered its decision, the parties to this case reached the aforementioned settlement, and the Stearneys filed the petition under consideration, relying upon our ability to exercise supplemental jurisdiction under 28 U.S.C. § 1367. The petition has been actively and extensively litigated since it was filed.

In the appellate case, the Seventh Circuit ultimately concluded that federal question jurisdiction was not present and directed that the cases be remanded to state

court. *Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 912 (7th Cir. 2007). On August 2, 2007, we complied with that directive in all of the cases except this one.

Thus, before we proceed, we must satisfy our obligation to examine our jurisdictional basis for continuing to preside over this case. *See Tylka v. Gerber Products Co.*, 211 F.3d 445, 447-48 (7th Cir. 2000). Even in a case where the claims upon which a federal court's original jurisdiction was based have been eliminated, a court may continue to exercise supplemental jurisdiction over purely state claims if significant time and resources have been expended when the federal claims drop out. *See, e.g., Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 617 (7th Cir. 2001); *Timm v. Mead Corp.*, 32 F.3d 273, 276 (7th Cir. 1994). By the time the mandate issued in Bennett, this case had been before this court for over a year, the parties had achieved a private resolution in the underlying suit, and the petition for attorney's lien was being actively litigated. Given the amount of water already over the dam in this proceeding, we are of the opinion that a remand of the attorney's lien issue would not promote efficient use of judicial resources. Therefore, we conclude that the better course of action is to continue to exercise our supplemental jurisdiction over this case.

Moreover, this case is one of the subset in which diversity jurisdiction was present that the time the case was removed, even though the removing parties did not

assert diversity jurisdiction as a basis for removal. The members of the Woods family were citizens of Indiana at the time the case was removed. Southwest is a citizen of Texas; Boeing, a citizen of Delaware and Illinois.[2] Given the nature of the injuries alleged, the amount in controversy clearly exceeded $75,000. Consequently, there can be no question that diversity jurisdiction was present in this case at the time of removal and settlement.

## A. Cross Motions for Summary Judgment

The parties' motions for summary judgment present several issues for our consideration. The first is whether the January 2006 agreement memorializes a referral-only arrangement or one for joint representation. The second queries whether the Stearneys can enforce the agreement with regard to the fee provisions despite the termination of their representation before any complaint was filed or recovery achieved. The third examines whether the Stearneys are limited to a quantum meruit calculation of fees based on the amount of work they performed prior to the termination if they cannot enforce the agreement. Only the first two are ripe for decision at this

---

[2]Boeing's Illinois citizenship does not translate into an automatic inability of this court to exercise jurisdiction over the subject matter. Under the "forum defendant rule" of 28 U.S.C. § 1441(b), diversity cases can be removed to federal court only if no properly joined and served defendant is a citizen of the state in which the suit is brought. Though that rule can require remand of a removed case to state court, it is not jurisdictional; the ability to seek remand is waived if the plaintiff does not invoke it within 30 days of the removal. *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 380 (7th Cir. 2000).

time; the Schlyer firm and the Clifford firm have indicated that they intend to challenge the Stearney firm's ability to recover any fee at all, so it is premature to consider issues that may arise under the doctrine of quantum meruit. Consequently, we will limit our consideration to the nature of the agreement and the Stearneys' ability to enforce the terms of the January 2006 agreement.

*1. Nature of the Agreement*

Illinois attorneys' ability to charge fees of their clients is governed by Illinois Rule of Professional Conduct 1.5. Of particular pertinence to the Stearneys' petition are the provisions set out in Rule 1.5(f) and 1.5(g) regarding sharing of fees by attorneys who are not members of a single firm. Rule 1.5(f) controls joint representation agreements by providing that

> a lawyer shall not divide a fee for legal services with another lawyer who is not in the same firm, unless the client consents to employment of the other lawyer by signing a writing which discloses: (1) that a division of fees will be made; (2) the basis upon which the division will be made, including the economic benefit to be received by the other lawyer as a result of the division; and (3) the responsibility to be assumed by the other lawyer for performance of the legal services in question.

Rule 1.5(g) deals with situations involving referrals and specifies that

> [a] division of fees shall be made in proportion to the services performed and responsibility assumed by each lawyer, except where the primary service performed by one lawyer is the referral of the client to another lawyer and (1) the receiving lawyer discloses that the referring lawyer has received or will receive economic benefit from the referral and the extent and basis of such economic benefit, and (2) the referring lawyer agrees to assume the same legal

responsibility for the performance of the services in question as would a partner of the receiving lawyer.

The parties do not dispute that the Stearneys and the attorneys of the Clifford firm were members of different firms or that the agreement contemplated a division of fees.

In interpreting agreements, including those regarding division of legal fees, a court seeks to give effect to the parties' intent. *See Virginia Sur. Co., Inc. v. Northern Ins. Company of New York*, 866 N.E.2d 149, 153 (Ill. 2007). Illinois contract law presumes that a written agreement communicates the intent of the parties without a need to resort to extrinsic evidence of the same. *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999). The Stearneys opt for the referral agreement concept of the relationship of the parties to support their legal position that the rights and obligations were fixed and unalterable at the time of the agreement's execution. According to their argument, postagreement events do not relieve the Clifford firm's obligation to share the legal fees 50/50. The Clifford firm asserts that the January 2006 agreement was one for joint representation that contemplated future legal services to be rendered by each of the law firms that were signatories to the agreement.

Settled principles of Illinois law render unnecessary any determination of how to correctly characterize the relationship established by the January 2006 agreement. An Illinois client enjoys an absolute right to terminate the services of any attorney

retained by the client; upon such termination, any contract concerning the attorney-client relationship likewise terminates by operation of law.  *See In re Callahan*, 578 N.E.2d 985, 987 (Ill. 1991); *Rhoades v. Norfolk & Western Railway Co.*, 399 N.E.2d 969, 988 (Ill. 1979); *Thompson v. Hiter*, 826 N.E.2d 503, 509 (Ill. App. Ct. 2005). This is particularly the case in the context of fee-sharing arrangements, which under Illinois law require the client's consent no matter what type of fee sharing is envisioned.  Such arrangements are only acceptable under Illinois Rule of Professional Conduct 1.5(f) and 1.5(g) if they serve the client's best interest, *see Romanek v. Connelly*, 753 N.E.2d 1062, 1070-71 (Ill. App. Ct. 2001); a client demonstrates whether the fee arrangement is in his or her best interest by consenting to it, not consenting to it, or changing his or her mind about consenting to it.  The protections provided by Rule 1.5 would be significantly compromised if the client could be protected from the adverse effects of fee-splitting arrangements only by never entering into one at all.  This straightforward principle makes it impossible for the Stearneys to prevail on their position that a client's obligation to pay an attorney pursuant to a contract is irrevocably fixed at the time the contract is executed.  The plethora of Illinois cases underscoring the importance of a client's right to be represented only by counsel of his or her own choosing leaves no room for an alternate interpretation, even when doing so has an adverse effect on the attorneys involved. *See, e.g., Albert Brooks*

*Friedman, Ltd. v. Malevitis*, 710 N.E.2d 843, 847 (Ill. App. Ct. 1999); *Elane v. St. Bernard Hospital*, 672 N.E.2d 820, 822 (Ill. App. Ct. 1996); Holstein v. Grossman, 616 N.E.2d 1224, 1234 (Ill. App. Ct. 1993); Schniederjon v. Krupa, 514 N.E.2d 1200, 1202 (Ill. App. Ct. 1987).[3]

The proposition that the Stearneys' legal obligations were complete by virtue of the entry of the Clifford firm as a legal representative of the Woodses is belied by the plain and unambiguous language of the January 2006 agreement, which clearly contemplates continued involvement of the Stearneys in the representation. Any

---

[3]Though the Stearneys cite two cases from other jurisdictions in support of their argument that the client's consent is only significant at the time that a case is referred, we disagree that they dictate a different outcome. *Idalski v. Crouse Cartage Co.*, 229 F. Supp. 2d 730 (E.D. Mich. 2002); *Burrell v. Sperry Rand Corp.*, 534 F. Supp. 680 (D. Mass. 1982). The applicable rules of professional conduct for Michigan and Massachusetts are not the same, and indeed are not as extensive, as that for Illinois. *Compare* Ill. Rule Prof'l Conduct 1.5(f), 1.5(g) *with* Mich. Rule Prof'l Conduct 1.5(e) *and* Mass. Rule Prof'l Conduct 1.5(e). The Stearneys have provided no authority that the public policy of those states is identical to that found in Illinois with respect to fee-sharing agreements. Moreover, we disagree with the conclusion reached by the *Idalski* court that the potential harm to referring attorneys of gamesmanship by receiving attorneys is of greater importance than the potential harm to clients of circumscribing their ability to be represented by and contractually beholden to only counsel of their choice. *See Idalski*, 229 F. Supp. 2d at 739. Unquestionably, an attorney bears some risk when entering into a referral arrangement that the client may later determine that the arrangement no longer suits him or her. However, that risk is an inherent part of the trade-off of allowing an attorney to gain from referring a case rather than working out an arrangement under Rule 1.5(f) whereby the attorney is compensated in a manner commensurate with the actual work he or she does on the client's behalf.

obligation to pay fees was contingent upon the Stearneys continuing to perform their contractual obligations until recovery was obtained, but the Stearneys were fired well before the case was settled and the satisfaction of the contingency provision. The operation of Illinois law supplies the consequences resulting from the discharge of the Stearneys.

Illinois jurisprudence establishing these results and the public policy intended to be safeguarded are clear and consistent. The most recent exposition is set forth in the Illinois Appellate Court's decision in *Thompson v. Hiter*. In *Thompson*, an attorney and a law firm entered into a joint venture with respect to a wrongful death claim pursuant to a contingent fee agreement. 826 N.E.2d at 506. The client subsequently fired the law firm but continued to retain the attorney, a situation strikingly similar to the facts of this case. *Id*. The court held that the act of a client who discharges a joint venturer effectively terminates the contingent fee arrangement between the client, the fired law firm, and the attorney who continued to be retained. *Id*. at 515-16. The holding of *Thompson* clearly bars the Stearneys' claim that the January 2006 agreement is enforceable.

The Stearneys attempt to avoid the effect of *Thompson* by claiming, among other things, that various pronouncements in the opinion were dicta and unworthy of application to the facts here. It is also argued that *Thompson* involved a joint

representation agreement rather than a referral type arrangement. Contrary to the Stearneys' interpretation, the language of *Thompson* is actually quite consistent with prior holdings in Illinois cases in both outcome and reasoning. The main discussion in *Thompson* focused on the difference between winding up the affairs of a legal partnership with a variety of cases and matters needing attention, as was the case in *Ellerby v. Spiezer*, 485 N.E.2d 413 (Ill. App. Ct. 1985), versus the termination of one of two legal representatives in a single contingency fee endeavor before the contingency materialized, as occurred in *Thompson* and the instant case. The Stearneys' request that we ignore the holding in *Thompson* is irreconcilable with numerous Illinois cases preceding it, which hold that a client's right to terminate a lawyer's services is a paramount public policy and cannot be saddled with obligations that either diminish the right or render it ineffective. There is no principled basis to depart from the clear and direct application of *Thompson*.

Even if we were to accept the Stearneys' position that the parties intended to memorialize a referral, because the Woods family ceased to consent to the fee sharing and removed any ability of the Stearney firm to maintain professional responsibility for the representation, the January 2006 agreement became unenforceable under Rule 1.5(g) after the discharge. The Stearneys' position that an attorney can satisfy Rule 1.5(g)'s requirement of assuming professional responsibility solely by being willing

to assume that responsibility at the time the referral is made is unsupportable. The Illinois Supreme Court has unequivocally stated that, in this context, the term "professional responsibility" means liability in malpractice. *Storment*, 786 N.E.2d at 971. A client who fires an attorney cuts off his or her ability to pursue a cause of action for malpractice caused by actions or decisions taken after the representation was terminated. *See York v. Stiefel*, 440 N.E.2d 440, 445 (Ill. App. Ct. 1982), *aff'd in part, rev'd in part on other grounds*, 458 N.E.2d 488 (Ill. 1983) (stating that attorney's duty to exercise due care toward client terminates when attorney-client relationship terminates); *Majumdar v. Lurie*, 653 N.E.2d 915, 918 (Ill. App. Ct. 1995) (noting that a cause of action for legal malpractice requires a breach of an attorney's duty to a client). Accordingly, an attorney cannot assume professional responsibility for a client's legal matter after termination regardless of whether he or she is subjectively willing to do so and ceases to be able to render the performance required by the agreement and Rule 1.5(g).

Additionally, the Stearneys' original agreement with the Woods family, which contemplated the Stearneys performing all legal work related to the case, specified that in the event of discharge, the Woodses would pay the Stearneys "$190 per hour for the time the Stearney firm actually worked on the case, regardless of whether the family obtained any recovery on their claims." The January 2006 agreement, by contrast,

mandates very little involvement on the part of the Stearneys, yet the Stearneys would have us construe it in such a way as to entitle them to a greater fee than they could have collected if they had handled the entire case up to the point of termination. This incongruous result flies in the face of the idea that referrals are intended to foster a client's ability to obtain qualified counsel, not to permit an attorney to pass along a potentially lucrative representation and then collect a large fee despite not having even the minimal involvement dictated by Rule 1.5(g).

The Stearneys advance a related policy-based argument that, unless a referral fee is treated as earned at the time of the referral, attorneys will retain cases outside their ken, thus undermining the policy of clients being able to obtain representation from more qualified counsel. Certainly, the purpose behind allowing referrals in the first instance is to encourage attorneys who are not qualified to properly handle a particular matter (for whatever reason) to assist the client in obtaining counsel qualified in a particular matter. An attorney has an independent obligation under Illinois Rule of Professional Conduct 1.1 to only represent clients for matters in which the attorney knows or reasonably should know that he or she is competent to provide representation. In light of this concurrent duty, we are confident that potentially referring attorneys will not compromise their professional integrity and risk disciplinary action by continuing their involvement in cases where they cannot provide

competent representation. Moreover, if clients remained obligated to pay full contractual fees to discharged referring attorneys (a result deemed impermissible for nonreferring attorneys by the Illinois Supreme Court in *Rhoades*, 399 N.E.2d at 974), the incentive for qualified receiving attorneys to take on a case would be significantly diminished by the irrevocable reduction in potential recovery that the Stearneys urge. *Cf. Corti v. Fleisher*, 417 N.E.2d 764, 770 (Ill. App. Ct. 1981) (discussing ramifications of such an arrangement when all fees are to be paid to referring attorney). Thus, the system the Stearneys advocate could actually undermine, not further, clients' ability to obtain qualified counsel.

Fee arrangements that violate Rule 1.5 cannot be enforced, *Richards v. SSM Health Care, Inc*., 724 N.E.2d 975, 979 (Ill. App. Ct. 2000), and the fact that the agreement may have been permissible at its inception does not prevent it from ever being otherwise. An agreement that becomes "seriously injurious to the public order" during the course of its performance cannot recover on his or her bargain after that time. *See Meissner v. Caravello*, 124 N.E.2d 615, 616 (Ill. Ct. App. 1954), citing 6 Williston on Contracts, § 1767:5018-19 (1938). This result is necessary because a court cannot enforce an agreement that is contrary to public policy. *O'Hara v. Ahlgren, Blumenfeld and Kempster*, 537 N.E.2d 730, 734 (Ill. 1989). When the Woods family terminated the Stearneys' representation, the January 2006 agreement ceased

to comport with the public policy of the state of Illinois embodied in Rule 1.5 and became unenforceable. Accordingly, we conclude that the Stearneys cannot recover fees pursuant to the January 2006 agreement and grant summary judgment to Respondents on that legal issue.[4]

With regard to the remaining issue, as stated above, because the Schlyer firm and the Clifford firm have indicated that they will challenge the Stearneys' right to recover any fee at all, we will not opine at this time as to the appropriate application of the doctrine of quantum meruit to the Stearneys.

**B. Motion to Dismiss**

Count II of the petition alleges that the January 2006 agreement formed a joint venture between the Stearney firm and the Clifford firm, making each a fiduciary to the other with regard to the venture undertaken. In Illinois, a joint venture is formed when two or more persons associate with each other to carry out an enterprise to make a profit. Holstein, 616 N.E.2d at 1236. The intent of the parties in associating with each other is the most significant element in determining whether a joint venture existed. *Id*. To determine whether the parties intended to form a joint venture, courts will look

---

[4]The Stearneys' attempt to characterize this dispute as one between attorneys rather than between the client and the attorney to escape this conclusion is unavailing. The rules of law applicable to division of fees pursuant to a contingent fee agreement are the same whether the attorney seeks to recover from a client or former co-counsel. *Hofreiter v. Leigh*, 465 N.E.2d 110, 112 (Ill. Ct. App. 1984).

to such factors as an agreement to carry on the enterprise, contribution of resources or skills by each party, an ability to exercise control of the enterprise, and sharing of profit or loss from the enterprise. *Id*. Parties who enter a joint venture owe each other a fiduciary duty to act for each other's benefit with respect to matters within the venture's scope of the venture. *Id*. at 1236-37. The Stearneys contend that the Clifford firm breached its fiduciary duty by representing the Woods family after the Stearneys had been discharged and by entering into the March 2006 agreement with the Schleyer firm.

On a motion to dismiss, we must construe all well-pleaded facts contained in the complaint (in this case, petition) as true. As the parties point out, Illinois law is not clear on whether a joint venture is necessarily formed or necessarily not formed when one attorney refers a case to another. *Compare, e.g., Romanek*, 753 N.E.2d at 1072 (noting that agreement to share fees pursuant to referral agreement alone insufficient to establish joint venture) *and Canel & Hale, Ltd. v. Tobin*, 710 N.E.2d 861, 871 (Ill. App. Ct. 1999) (same) *with Larry Karchmar, Ltd. v. Nevoral*, 707 N.E.2d 223, 226-27 (Ill. App. Ct. 1999) (concluding that joint venture can result when two attorneys share fees in referral setting) *and Holstein*, 616 N.E.2d at 1237-38 (same). According to the Stearneys, this alone makes dismissal on 12(b)(6) grounds inappropriate. However, that argument ignores the fact that a plaintiff can plead him- or herself out of court if

the complaint or documents attached thereto assert facts that defeat a claim, making 12(b)(6) dismissal appropriate. *See*, *e.g., Thompson*, 300 F.3d at 753. The petition and the letter contained in Exhibit E thereto establish that, on February 9, 2006, the Woods family terminated the Stearneys' representation of them.[5] After that point, the Stearneys lost their ability to share in the professional responsibility for the representation and therefore could no longer claim any "degree of proprietorship or mutual right to exercise control over the enterprise." *See Holstein*, 616 N.E.2d at 1238. If events subsequent to the formation of a contract for a joint venture make the accomplishment of the venture's purpose impracticable, the contract terminates and the venture is dissolved. *See Maimon v. Telman*, 240 N.E.2d 652, 655 (Ill. 1968). Thereafter, the venture's liabilities are paid and the remaining assets distributed, and the venture terminates. See Mandell v. Centrum Frontier Corp., 407 N.E.2d 821, 831 (Ill. App. Ct. 1980).

In this case, according to the Stearneys' own allegations, the venture became impracticable and was dissolved when the Woodses fired them in February 2006. At that time, no recovery had been achieved that would have resulted in the contingent fee being paid to the joint venturers. In such an instance, Illinois law provides that the

---

[5]Despite the Stearneys repeated attempts to cast doubt on the effect of the February 9 letter, there is no indication or allegation that their representation continued beyond that point.

possibility of a fee is not an asset of the joint venture. *Thompson v. Hiter*, 826 N.E.2d 503, 515 (Ill. App. Ct. 2005).

The Stearneys contend that Thompson does not control here because it is not reconcilable with other decisions of the Illinois courts, namely *Ellerby v. Spiezer*, *Holstein, and Karchmar*. However, each of these cases differs from the instant case factually. *Ellerby* involved a partnership, not a joint venture. 485 N.E.2d 413 (Ill. App. Ct. 1985). The *Thompson* court expressly identified and treated this difference between the two cases. In *Karchmar*, the reviewing court concluded that a factual dispute existed as to whether the client had ever discharged the referring attorney. 707 N.E.2d at 227. In this case, there is no question that the Woodses fired the Stearney firm in February 2006. *Holstein* did not involve any termination of the referred attorney. 616 N.E.2d 1224. Thus, we disagree with the Stearneys' position that these cases cast doubt on the viability of Thompson or its applicability to this case. The unrealized contingency fee cannot be considered an asset of the joint venture at the time that it was dissolved; the Stearneys have pointed to no other potential assets or liabilities, so there was no post dissolution business to wind up. Based on the circumstances set forth in the Stearneys' petition, therefore, the joint venture was dissolved and terminated at the same time. There was no duty to postpone the winding up of the venture until after the case was resolved; to do so would defeat the effect of

the Woodses' exercise of their right to discharge their counsel and obtain new representation.  *See Thompson*, 826 N.E.2d at 515-16.

Much of the Stearneys' argument is based on the assumption that once a joint venture is established, general principles of joint venture and agency law become operative and transcend those principles uniquely inherent in attorney-client relationships and recognized as being inviolate.  For example, there is a constant reference by the Stearneys to the fiduciary duty the Clifford firm owed to the Stearneys by virtue of their joint representation of the Woodses.  This ignores both the general law of Illinois that joint venturers do not have a continuing duty to each other after the venture terminates and the inapplicability of any such duty (even if one existed) to trump the paramount duty of an attorney to a client.  *See Thompson*, 826 N.E.2d at 516; *Electrical Contractors, Inc. v. Goldberg & O'Brien Electric Co.*, 331 N.E.2d 238, 243 (Ill. App. Ct. 1975).

The Stearneys also urge that we find that the Clifford firm owed, to the Stearneys, a series of affirmative acts that should have been undertaken in response to the termination of their legal representation of the Woodses.  These fiduciary duties described by the Stearneys would have been not only a breach of the Illinois Rules of Professional Conduct but also amount to the effective repudiation of a client's right to discharge his or her attorney.  No fiduciary duties existed on the part of the Clifford

firm to diminish, or make more costly, the Woods family's right to terminate the Stearneys or to act in a way directly opposite to the wishes of its clients. At the point that the Woods family terminated the representation of the Stearneys and the Clifford firm, the joint representation ceased to exist and the Clifford firm could conduct itself free from any continuing duty to its former co-counsel.

In sum, the facts the Stearneys assert in their verified complaint defeat their claim of a breach of fiduciary duty, and dismissal of Count II is therefore appropriate.

## CONCLUSION

Based on the foregoing, the motion for partial summary judgment of Count I is granted in part and denied in part. The motion to dismiss Count II is granted.

_____
Charles P. Kocoras
United States District Judge

Dated:   October 18, 2007